UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHELLE MATHIS-KAY, Individually and as
Administratrix of the Estate of EARL A. KAY,

          Plaintiff,
v.
                                        **DECISION AND ORDER**
                                              06-CV-815S
MCNEILUS TRUCK & MANUFACTURING, INC.,
MCNEILUS TRUCK & MANUFACTURING, CO.,
MCNEILUS COMPANIES, INC.,
OSHKOSH TRUCK CORPORATION,

          Defendants.

## I. INTRODUCTION

In this diversity action, Plaintiff Michelle Mathis-Kay, claims that Defendants McNeilus Truck & Manufacturing, Inc., McNeilus Truck & Manufacturing, Co., McNeilus Companies, Inc., and Oshkosh Truck Corp., are strictly liable for the design and manufacture of an allegedly defective exterior riding step and grab bars, which were part of the garbage truck from which decedent Earl. A. Kay fell, suffering injuries resulting in his death. Ms. Mathis-Kay further brings claims against McNeilus on the basis of inadequate warning, breach of warranty, and negligence. Jurisdiction is proper pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441. Presently before this Court is Defendants' Motion for Summary Judgment. Also before this Court is Defendants' Motion to Exclude Expert Testimony.[1] For the following reasons, Defendants' Motion to Exclude Expert Testimony

---

[1]In support of their motions, Defendants filed a Statement of Material Facts; a Memorandum of Law; Exhibits; an Exhibit List; and a Reply Memorandum (Docket Nos. 15, 20, 23, 25, 27.)
    In opposition, Plaintiff filed a Response in Opposition to Defendants' Motion for Summary Judgment with a Statement of Facts and attached Exhibits; as well as Memorandum of Law. (Docket Nos. 18, 19.) Plaintiff appears to have twice filed these documents (see Docket Nos. 21, 22.) For sake of

1

will be denied. Defendants' Motion for Summary Judgment will be granted in part and denied in part.

## II. BACKGROUND

**A.    Facts**

Much of the relevant background is undisputed. Plaintiff Michelle Mathis-Kay was the decedent's lawfully wedded wife and was appointed Administratrix for the Estate of Earl A. Kay by the Erie County Surrogate's Court on February 28, 2006. (Notice of Removal, Docket No. 1, Ex. B ("Complaint"), ¶¶ 2-3.) Now and at all times relevant, Mathis-Kay has been a resident of Erie County, New York. (Id. at ¶ 4.) The McNeilus Defendants are foreign corporations registered and authorized to do business in Minnesota, with their principal place of business in the same state. (Id. at ¶ 7-9.) Defendant Oshkosh Truck Corporation is incorporated under the laws of Wisconsin, with its principal place of business in Wisconsin, and is the parent corporation of the McNeilus defendants. (Notice of Removal, Docket No.1, ¶ 4.)

Decedent was an employee of BFI Allied Waste, Inc., a corporation in the business of refuse collection. (Comp. ¶ 5.) Decedent worked as part of a refuse pick-up crew, consisting of a driver and an assistant. (Id. at ¶ 27; Defendants' Statement of Material Facts in Support of Defendants' Motion for Summary Judgment ("Defs.' Statement"), Docket No. 15, ¶ 13.)[2] As the assistant, Decedent would ride the exterior of a garbage

---

ease this Court will refer exclusively to the later filed documents.

[2]This Court has accepted facts included in Plaintiff's and Defendants' Statement of Facts to the extent that they have not controverted each other's statements. See Local Rule 56(a)(2) (statements of material fact that are not specifically controverted by the non-moving party are deemed admitted).

truck and periodically get off the truck to collect garbage. (Defs.' Statement ¶ 13.) The vehicle to which Decedent was assigned was a rear loader garbage truck equipped with an external riding step along both sides of the vehicle. (Id. at ¶ 18.) This external step was approximately ten inches in width, with a surface area of 330 square inches, and a slip-resistant surface. (Id.) In addition to the external step, the truck also had grab handles capable of withstanding a pull of at least 500 pounds. (Id. at ¶ 20.) Finally, the truck bore warnings alerting users that the exterior riding step should not be used when the vehicle was operated in reverse, traveled at speeds in excess of 10 miles per hour, or for distances greater than two tenths of a mile. (Id. at ¶ 21.) The grab handles, riding step, and rear loader garbage truck were all designed and manufactured by Defendants. (Id. at ¶¶ 17-18, 20.)

On November 8, 2004, Decedent was riding the truck's external step. (Plaintiff's Statement of Facts ("Pl.'s Statement"), Docket No. 21, ¶ 4.) Two other riders positioned on the passenger's side external step. (Id.) The team was driving through a small subdivision when the truck rounded a corner by making a right turn at approximately 5 miles per hour. (Id. at ¶¶ 4, 11.) The driver heard one of the riders yell "whoa, whoa," and upon looking back saw that decedent was no longer onboard. (Id. at ¶ 4)

Decedent was subsequently found lying at the edge of the grass a few hundred feet past the curve. (Defs.' Statement ¶ 15.) Decedent had sustained a head injury and was taken to DeGraff Hospital, and, subsequently, the Erie County Medical Center trauma unit. (Pl.'s Statement ¶¶ 14-16.) Decedent died a number of days later, still in the medical center's care. (Id. at ¶ 16.)

Throughout this time, decedent's head injury rendered him unintelligible. Decedent

was neither able to communicate nor answer questions about his accident. (Defs.' Statement ¶ 16.) In addition, neither the driver, nor the other riders knew when decedent fell from the truck, whether his hands or feet came loose first, or how decedent struck the ground. (Id. at ¶ 15.) Plaintiff now seeks to hold Defendants strictly liable for manufacturing a defectively designed riding step and grab bars, as well as inadequately warning users of danger, breach of warranty, and negligence.

## B.  Procedural History

Plaintiff commenced this action on November 9, 2006 by filing a complaint in the New York Supreme Court, Erie County against Defendants alleging strict product liability, breach of warranty, and negligence. (Id. at ¶ 2.) The action was subsequently removed to the United States District Court for the Western District of New York on December 12, 2006. (Id.)

On January 29, 2009 Defendant filed a motion for summary judgment seeking dismissal of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 56, or, in the alternative, exclusion of expert testimony by Plaintiff's experts Gabriel Alexander and Rober Sugarman pursuant to Federal Rule of Evidence 702. Plaintiff opposes both motions.

## III. DISCUSSION

### A.  Motion to Exclude Plaintiff's Expert Witnesses

Before this Court can consider Defendants' Motion for Summary Judgment, it must determine whether testimony from Plaintiff's experts Gabriel Alexander and Dr. Robert

Sugarman is admissible. Plaintiff relies on the testimony of both experts to make out a *prima facie* case for defective product design. See Toole v. Toshin Co., Ltd., No. 00-CV-821S, 2004 WL 2202580, at *7 (W.D.N.Y. Sept. 29, 2004) (plaintiff prevented from establishing design defect by exclusion of expert testimony).

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which reads:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The proponent of expert testimony has the burden of demonstrating by a preponderance of the evidence that the testimony is competent, relevant, and reliable. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 n.10, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993); Bourjaily v. United States, 483 U.S. 171, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987);  Koppell v. New York State Bd. of Elections, 97 F. Supp. 2d 477, 479 (S.D.N.Y .2000)).

Defendants do not challenge that Plaintiff's experts are qualified or that their testimony is relevant, but do challenge the testimony's reliability. See Fed. R. Evid. 702

(Advisory Committee Notes, 2000 amendment) (noting that trial judges have "the responsibility of acting as gatekeepers to exclude unreliable expert testimony"). In considering an expert's reliability a court must determine "whether the proffered testimony has a sufficiently reliable foundation to permit it to be considered" by the trier of fact. Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002). Expert testimony may be considered reliable if: (1) the testimony is based on sufficient facts or data; (2) the expert's technique or methodology in reaching the conclusion is considered reliable; and (3) the expert has applied the methodology reliably to the facts of the case. Fed. R. Evid. 702. None of these factors are determinative. Id. (Advisory Committee Notes, 2000 amendments); see also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150-51, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). Rather, district courts have broad discretion in deciding the admissibility of expert testimony. See United States v. Farhane, 634 F.3d 127, 158 (2d Cir. 2011) (citing Kumho, 526 U.S. at 152). However, expert testimony must be grounded in the methods and procedures of science, not unsupported speculation or subjective belief. Daubert, 509 U.S. at 590. In ruling on the admissibility of an expert's testimony, a court must always focus on the methodology employed, rather than the expert's actual conclusions. Id. at 595; TC Sys. Inc. v. Town of Colonie, New York, 213 F. Supp. 2d 171, 175 (N.D.N.Y. 2002).

      Defendants argue that neither Mr. Alexander's nor Dr. Sugarman's testimonies are reliable. Defendants point out that Mr. Alexander has performed no studies on how workers utilize refuse collection equipment, and performed no tests on the products at issue. In particular, Defendant charges that Mr. Alexander's proposed alternative design is based on standards for "access systems for off-road machines" and is hence

6

inapplicable to refuse collectors.  Exclusion of an expert's testimony is justified where it concerns alternative designs never put into application by the expert or any identified competitive manufacturer.  See Brooks v. Outdoor Marine Corp., 234 F.3d 89, 92 (2d Cir. 2000).  Here, although Mr. Alexander's testimony and alternative design do rely primarily on regulations listed under "Off-Road Machines" it is disputed whether these regulations are limited to off-road vehicles or set a minimum industry standard.  (See Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Resp."), Docket No. 22, Ex. 7, Engineers Report of Kay Incident.)  Moreover, Mr. Alexander's background involves testing grab handles in use by other products in the marketplace.  Cf. Molina v. BIC USA, Inc., 199 F. Supp. 2d 53, 77 (S.D.N.Y. 2001) (noting that expert had failed to identify any product in the marketplace utilizing alternative design).  That Mr. Alexander's tests were conducted on vehicles intended to be stationary is ameliorated by the fact that the rear loader garbage truck appears to be the only type of vehicle to feature riding steps and grab handles for the express purpose of supporting individuals while the truck is in motion.

Mr. Alexander's actual methodology is sufficiently supported by his review of images taken of the rear-loader, and application of industry standards produced by several engineering and safety organizations, including the American National Standards Institute ("ANSI").  Ultimately the extent to which Mr. Alexander's testimony is weakened by his failure to test grab handles on refuse collectors, as opposed to other vehicles, will be up to the jury.  This Court will not exclude Mr. Alexander's testimony.

As to Dr. Sugarman, Defendants argue that he has had no prior exposure to standards for rear loaders, and has not produced any alternative designs, much less tested

7

them. Nevertheless, consideration of Dr. Sugarman's methodology does not warrant exclusion. Dr. Sugarman's report reveals that he reviewed photographs of the site as well as visited the location of the accident. He was presented with the dimensions of all relevant and known factors in this case and on their basis determined the force necessary for decedent to avoid being thrown from the truck by factoring in the decedent's weight, the truck's velocity, and the angle of the turn. He compared this to the amount of force a person can exert based on the posture of his arms, and that this posture was incompatible with the design of the truck's grab bars. This constitutes a sufficiently reliable methodology that was reasonably applied to the facts presented. Dr. Sugarman's testimony will not be excluded. See Gen. Elec. Co., v. Joiner, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997) (only where there is "too great an analytical gap between the data and the opinion proffered should an expert's opinion be excluded"). Having considered whether the challenged testimony is admissible, this Court can now consider whether summary judgment is appropriate.

**B.     Motion for Summary Judgment**

    **1.     Legal Standard**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment. Anderson, 477 U.S. at 252.  A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998).  That is, there must be evidence from which the jury could reasonably find for the nonmoving party. Anderson, 477 U.S. at 252.

### 2. Defendant's Motion for Summary Judgment

Defendants argue that summary judgment is appropriate because Plaintiff has failed to show that a product defect was a substantial factor in causing decedent's accident. Because Plaintiff alleges both that the exterior riding step and grab bars were defectively

designed, as well as that Defendants' provided inadequate warning, this Court must separately consider whether summary judgment is appropriate on each claim.³

### a. Design Defect

To establish strict products liability for a defective design under New York law, a plaintiff must demonstrate that "(1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing plaintiff's injury." G.E. Capital Corp. v. A.O. Smith Corp., No. 01 Civ. 1849, 2003 WL 21498901, at *4 (S.D.N.Y. July 1, 2003) (citing Molina, 199 F. Supp. 2d at 60); see also Voss v. Black & Decker Mfg. Co., 450 N.E.2d 204, 207-08 (N.Y. 1983).⁴ In New York, "a defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use; that is one whose utility does not outweigh the danger inherent in its introduction into the stream of commerce." Robinson v. Reed-Prentice Div. of Package Mach. Co., 426 N.Y.S.2d 717, 720 (1980).

In determining whether a product is unreasonably dangerous and poses a

---

³None of the parties address Plaintiff's breach of warranty claim. Therefore, this Court will not consider whether Defendant's Motion for Summary Judgment should be granted as to that claim. In addition, in applying New York law, other courts have found that there is virtually no difference between a negligence claim and a strict liability claim brought under a theory of defective design. See Rupolo v. Oshkosh Truck Corp., 749 F. Supp. 2d 31, 43 n. 4 (E.D.N.Y. 2010). Consequently, this Court will jointly consider whether Plaintiff's negligence and strict liability claims survive Defendants' Motion for Summary Judgment. See Santoro v. Donnelly, 340 F. Supp. 2d 464, 485 (S.D.N.Y. 2004).

⁴ In this diversity action, New York law governs all issues presented by Defendants' Motion for Summary Judgment. McCarthy v. Olin Corp., 119 F.3d 148, 153 (2d Cir.1997) (applying New York law to products liability action against out-of-state defendants).

substantial likelihood of harm, the court may consider the following factors in a risk-utility analysis.

> (1) the utility of the product to the public as a whole and to the individual user; (2) the nature of the product—that is, the likelihood that it will cause injury; (3) the availability of a safer design; (4) the potential for designing and manufacturing the product so that it is safer but remains functional and reasonably priced; (5) the ability of the plaintiff to have avoided injury by careful use of the product; (6) the degree of awareness of the potential danger of the product which reasonably can be attributed to the plaintiff; and (7) the manufacturer's ability to spread any cost related to improving the safety of the design.

Voss, 450 N.E.2d at 208-09.  If, after considering these factors, a reviewing court determines that the plaintiff has failed to establish a *prima facie* case of design defect, the court may dismiss the claim as a matter of law. See, e.g., Scarangella v. Thomas Built Buses, Inc., 695 N.Y.S.2d 520, 523 (1999).

### i.   Substantial Likelihood of Harm

The first element Plaintiff must meet on its design defect claim is "to present evidence that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm." Selective Way Ins. Co. v. Nutone, Inc., No. 1:07-cv-457, 2010 WL 3360127, at *4 (N.D.N.Y. Aug. 25, 2010) (quoting Voss, 50 N.Y.2d at 108). Plaintiff relies on the testimony of three experts, the aforementioned Mr. Alexander and Dr. Sugarman, as well as Lou Guilmette, to show that rear loader trucks are defectively designed.  Their testimonies show that rear loader garbage trucks are the only ones to

employ exterior riding steps, that individuals employing the riding steps can suffer injury as a result of falling from those steps, and that numerous individuals have in fact suffered injury as a result. (Pl.'s Statement ¶¶ 25, 95, 113.) Plaintiff's experts have stated that Defendants' design does not comport with industry standards. (Id. at ¶ 97.) Finally, Plaintiff has shown that Defendants were aware of this danger. (Id. at ¶¶ 100, 115.) Such evidence suffices to establish a *prima facie* case that the alleged defect was substantially likely to cause harm. See Rupolo v. Oshkosh Truck Corp., No. 05-CV-02978, 2009 WL 6547339, at *8 (E.D.N.Y. Oct. 27, 2009), *report and recommendation adopted in part, rejected in part by* 749 F. Supp. 2d 31 (E.D.N.Y. 2010) (accepting recommendation that summary judgment be denied where plaintiff demonstrated defendant's noncompliance with safety standards and defendant's awareness of danger).

Defendants respond that the truck and all its components was in full compliance with the industry standards of the American National Standards Institute, and that this should defeat Plaintiff's design defect claim. (Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, Docket No. 15, 8.) "Whether or not a product conforms to a specific safety standard is not dispositive of the issue of defective design." Mustafa v. Halkin Tool, Ltd., No. 00-CV-4851, 2007 WL 959704, at *8 (E.D.N.Y. 2007) (citing Church Ins. Co. v. Trippe Mfg., Co., No. 04-CV-6111, 2005 WL 2649332, at *2 (S.D.N.Y. Oct. 17, 2005)). Conformity with industry standards is but one of several factors for a jury to consider in determining whether a design is reasonably safe. Clarke v. LR Sys., 219 F. Supp. 2d 323, 334 (E.D.N.Y. 2002). In fact, before an industry standard is even considered a factor, the jury must determine whether the standard accurately describes the industry's general custom or usage. Mustafa, 2007 WL 959704, at *8 n. 14.

The American National Standards Institute is an organization that produces and distributes safety and design standards. See Cuntan v. Hitachi KOKI USA, Ltd. Both parties have provided substantial information on ANSI's standards for garbage trucks, grab handles, and riding steps. Defendants have discussed how ANSI considered, and rejected, removal of the riding step on the basis that doing so would create new hazards. Plaintiff in turn has attacked ANSI as a completely voluntary organization, which keeps no statistics, conducts no studies, and conducted no testing on the products in question. While this is all relevant information, it also highlights why a decision at this stage would be inappropriate. See Rupolo, 749 F. Supp. 2d at 43; Mustafa, 2007 WL 959704, at *8. Whether Defendants complied with ANSI standards, whether those standards are recognized in the refuse collection industry, and whether compliance with those standards is sufficient to shield a product from being defective are all questions disputed by the parties that are relevant to a determination of Defendants' liability. See Rupolo, 749 F. Supp. 2d at 43 (finding that whether ANSI standards applies was factual question). Consequently, this Court finds that resolution of these issues is properly left to a jury.

###### ii. Safer Alternative

New York law also requires a plaintiff to prove the existence of a feasible alternative design that would have prevented the accident. Rypkema, 263 F. Supp. 2d at 692; Gonzales v. Delta Int'l Mach. Corp., 307 763 N.Y.S.2d 844, 846, 2003 WL 22006879, at *1 (N.Y. App. Div. Aug. 25, 2003). If a plaintiff fails to offer proof of a safer alternative design, the plaintiff's defective design claim is properly dismissed. See Burgos v. Lutz, 512 N.Y.S.2d 424, 426 (N.Y. App. Div. 1987). Proof of a safer alternative design can consist either of (1) an expert demonstrating, through testing and construction of a prototype, that

13

an alternative is feasible, practical, economical, and safe; or (2) an expert identifying manufactures of similar equipment that have put the proposed design into use. Rypkema v. Time Mfg. Co., 263 F. Supp. 2d 687, 692 (S.D.N.Y. 2003). Despite this standard, there is no specific evidence a plaintiff must submit, although "unsupported, conclusory evidence on the technological and economic feasibility of a safer design is insufficient." Ferracane v. United States, No. 02-CV-1037, 2007 WL 316570, at *5 (E.D.N.Y. Jan. 30, 2007) (quoting G.E. Capital Corp. v. A.O. Smith Corp., No. 01 Civ. 1849, 2003 WL 21498901, at *4 (S.D.N.Y. July 1, 2003) (internal quotations omitted).

Plaintiff appears to rely on a number of possible alternative designs. Plaintiff asserts that the riding step could have been enlarged to allow a rider's foot to rest fully upon it and that the diagonal grab bars could have been made vertical or horizontal or enhanced by some cage or other restraint. Plaintiff also asserts that side loader garbage trucks constitute an alternative design. (Pl.'s Resp. 12.)

As to modifications to the riding step and grab bars, Plaintiff's proposed alternative designs fail to defeat Defendant's motion for summary judgment. Plaintiff's experts have not shown that such a modification would not result in conditions more dangerous than the current design. Dr. Sugarman, for example did not advocate for any particular solution because additional analysis needed to be done. (Defendants' Motion for Summary Judgment ("Defs.' Mot."), Docket No. 15, Ex. N, 107:18-108:10.) Mr. Alexander stated that a riding step was not, in and of itself, a design defect. (Ex. L, 26:6-26:12.) Mr. Guimette determined that the design was already reasonably safe as is. (Ex. M, 58:11-59:6.)

Similarly, Plaintiff has not proffered any studies demonstrating that vertical or horizontal grab bars, or some other cage or restraint would be a safer design. Again, Dr.

14

Sugarman advocated no particular design. Mr. Alexander suggested a design on the basis of an off-road vehicle standard, but provided no further evidence that this standard would make the design safer. Indeed, Mr. Alexander's testimony reveals that changing only the grab bars would not have prevented the accident in this case. Furthermore, his deposition reveals that no testing has been done on the effects of instituting his proposed alternative designs. (Ex. L, 100:6-101:6.) The same deposition shows that the changes in question have not been evaluated for their market effects. (Ex. L, 101:6-101:19.)

Plaintiff, through the testimony of its expert Mr. Guilmette, also argues that a side-loading garbage truck operated by a single individual constitute a feasible alternative. "Under New York law, a manufacturer cannot be held liable for failing to adopt an alternative product design that has not been shown to retain the 'inherent usefulness' the product offers when manufactured according to the more risk (but otherwise lawful design) that was actually used." Pinello v. Andreas Stihl Ag & Co. KG, No. 8:08-CV-00452, 2011 WL 1302223, at *15 (N.D.N.Y. Mar. 31, 2011) (quoting Rose v. Brown & Williamson Tobacco Corp., 855 N.Y.S.2d 119, 120 (2008)). Here, Mr. Guilmette's observations are limited to a specific geographic area, the City of Rochester, NY. Other testimony reveals that end-users themselves desired the rear-loader on the basis of productivity, and that in rural areas where homes are more spread out, a rear loader may be preferable for reducing fatigue. Nevertheless, Defendants have not provided this Court with sufficient grounds on why the side loader design does not constitute a feasible alternative design. Plaintiff has identified a similar design that is actually in use. Plaintiff's expert attests to the side loaders improved efficiency and value. Although Defendant's expert, Mr. Jerald Zanzig, states in his affidavit and deposition that customers preferred rear loaders because

of their productivity, this at most creates a dispute as to whether Plaintiff's proposed design was a feasible, safer, and economic alternative. For this reasons, this Court finds that Plaintiff has created a sufficient dispute to warrant submission of the matter to a jury.

### iii. Substantial Factor in Plaintiff's Injury

"[A] plaintiff asserting a products liability claim must prove that defendant's product was both defective and the proximate cause of her injuries." Gilks v. Olay Co., Inc., 30 F. Supp. 2d 438, 443 (S.D.N.Y. 1998). Defendants argue that neither Plaintiff nor Plaintiff's experts are able to eliminate all other possible causes of decedent's fall. Defendants specifically allege, based on their own expert's report, that decedent could have experienced fatigue after a ten hour workday which, combined with his morbid obesity, might have caused him to fall.

A similar argument was rejected by the court in Rupolo. There, defendant argued that the mere possibility of a defectively designed product causing an accident was insufficient to survive summary judgment and that plaintiff had failed to rule out the slippery nature of his own boots as the sole proximate cause of the accident. Rupolo, 749 F. Supp. 2d at 43. The court held that plaintiff "need not prove that the defective design is the sole proximate cause of [his] injury," but only needed to present admissible evidence sufficient for a trier of fact to reasonably conclude that the design defect did cause the accident. See id. at 45 (citing Derdiarian v. Felix Contracting Corp., 414 N.E.2d 666 (1980). It was defendant who bore the burden of showing that plaintiff's conduct was the sole proximate cause of his injuries. Id. (quoting Donald v. Shinn Fu Co., No. 99-CV-6397, 2002 WL 32068351, at *6 (E.D.N.Y. Sept. 4, 2002).

As in Rupolo, Plaintiff has, through the expert testimony of Mr. Alexander and Dr.

Sugarman, provided a jury with sufficient evidence from which to conclude that the riding step and grab bars' design flaws caused decedent to fall. Their reports show that decedent's body would have moved in response to the vehicle's change of direction, his upper body rotating outward, leading to one hand becoming overloaded, and resulting in a loss of balance. The lack of a proper step surface would have then prevented him from regaining his balance and helped bring about his fall. Although Defendants have responded with evidence showing that fatigue could not be ruled out, this does not show that fatigue was the sole proximate cause of the injury. It is left to the jury to determine the various contributing causes of decedent's fall.

Having concluded that Plaintiff has sufficiently disputed issues of material fact on each element of its design defect claim, this Court finds that summary judgment in Defendants' favor would be inappropriate. Consequently, Defendants' Motion for Summary Judgment on Plaintiff's design defect claim will be denied.

### b. Inadequate Warning

For plaintiffs to succeed on a claim of failure to warn, New York Law requires that plaintiffs show that a defendant's failure to warn was the proximate cause of the injuries. See Cramer v. Toledo Scale Co., 551 N.Y.S.2d 718, 719 (N.Y. App. Div. 1990). Furthermore, plaintiffs must also show that if the warnings had been adequate, the product would not have been misused and the accident would have been avoided. Banks v. Makita, U.S.A., Inc., 641 N.Y.S.2d 875, 877 (N.Y. App. Div. 1996). Finally, defendants are relieved of their duty to warn where "the plaintiff knows of the danger or if the danger is well known and should be obvious to anyone." Milliman v. Mitsubishi Caterpillar Forklist Am., Inc., 594 F. Supp. 2d 230, 246 (N.D.N.Y. 2009) (quoting Smith v. Hob Mfg., Inc., 634 F.

Supp. 1505, 1508 (N.D.N.Y. 1986).

In Milliman, the court concluded that the risk of falling from the platform of an orderpicker was obvious and well known where the platform extended more than ten feet in the air and provided little space to stand on. Id. at 247.  Similarly here, Plaintiff has not shown that the danger of falling from a riding step was somehow concealed from the riders who, by Plaintiff's account, must have felt particularly precarious clinging to the side of Defendants' rear loader garbage trucks.  Plaintiff appears to agree with this conclusion writing "[t]he obvious danger is that riding on the step and falling off the moving vehicle can cause serious injury or death is the issue that is not warned of." (Pl.'s Resp. 16-17.)  This Court agrees with Plaintiff's observation that the danger of falling from a moving vehicle while clinging to its sides "should be obvious to anyone." Milliman, 594 F. Supp. 2d at 247.  Even if this were not the case, Plaintiff has failed to show that decedent would have heeded the warnings by refusing to stand on the riding step, avoiding the accident.  See Banks, 641 N.Y.S.2d at 877.  For these reasons, Defendants' Motion for Summary Judgment as to Plaintiff's failure to warn claim will be granted.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Exclude Expert Testimony by Gabriel Alexander and Dr. Robert Sugarman is denied.  Defendants' Motion for Summary Judgment is granted as to Plaintiff's failure to warn claim, and denied as to Plaintiff's strict liability, negligence, and breach of warranty claims.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 15) is GRANTED in part and DENIED in part.

FURTHER, that Defendants' Motion to Exclude Expert Testimony (Docket No. 15) is DENIED.

SO ORDERED.


Dated:      September 24, 2011
            Buffalo, New York

                                            /s/William M. Skretny
                                           WILLIAM M. SKRETNY
                                                Chief Judge
                                          United States District Court